Good afternoon, your honors. May it please the court. Mary Pat Berry on behalf of appellant and defendant below, retired Santa Barbara County District Attorney's Office Investigator, Kenneth Aust. I plan to reserve two minutes of my time for rebuttal. I apologize for saying the name wrong, but please go ahead. This appeal follows the district court's denial of qualified immunity to Mr. Aust on summary judgment as to Mr. Alcox's 14th Amendment deliberate fabrication of evidence claim. Knowing that the court is familiar with the facts, I will go directly to what we believe was the district court's error in denying qualified immunity to Mr. Aust under both prongs of the qualified immunity analysis. So under the first prong, Mr. Alcox is required to show that Mr. Aust's conduct violated Mr. Alcox's constitutional rights. This court in Devereux v. Abbey set forth the approach for a plaintiff to prove or to show deliberate fabrication of evidence, and that's a two-pronged approach. So Mr. Alcox was either required to show that Mr. Aust continued his investigation despite the fact that he knew or should have known that Mr. Alcox was innocent, or that Mr. Aust, during his investigation, used such coercive and abusive techniques that he should have known use of those techniques would elicit false information. In this case, with regard to the first prong of the Devereux test, Mr. Aust interviewed Caroline Gonzalez two weeks after Mr. Alcox had provided a lawful confession to felony murder. So when Mr. Aust was conducting his investigation by interviewing Caroline Gonzalez, what he knew was that Mr. Alcox had confessed to felony murder, was in custody, and had been charged by the district attorney with that crime. Could I ask you, I know that your brief, and really both sides' briefs, focus on this interview of Gonzalez, but I didn't understand a plaintiff's case to focus only on that, and I thought he was also making an assertion about continuing to investigate even after Mr. or Officer Aust knew or should have known that Mr. Alcox was innocent, both before and after this interview that everyone is focused on. So could you speak to whether that is in the case and what your response to it is? Certainly, Your Honor. Well, so under Devereux, proving or showing deliberate fabrication of evidence under the first prong is intended to because if the investigator knew the person was innocent, then it would show that by continuing the investigation, the law enforcement officer intended to frame the individual, in this case, Mr. Alcox. So the only evidence that plaintiff in this case alleges was fabricated was Caroline Gonzalez's statement that the person she encountered in the alley behind the Alcox home and heard make incriminating statements was Joel Alcox. But as you described it, if I understand right, even as you just described the first prong, there is a requirement that if you know someone is innocent, you stop investigating. And as I read the allegations and facts in this record, I'm not sure why a jury couldn't conclude that the officers knew that Mr. Alcox was innocent. And Your Honor, I think the court's case of Cunningham versus City of Wenatchee addresses this prong of the Devereux test directly and is dispositive of this question in this case, because in Cunningham, Mr. Cunningham provided a lawful confession. And subsequent to him providing that confession, the law enforcement officer went ahead and interviewed his two daughters, who were the two suspected victims of sexual abuse by Mr. Cunningham. And Mr. Cunningham challenged the deliberate or alleged that there was deliberate fabrication of evidence. And this court said that under the circumstances where Mr. Cunningham had made a lawful confession, there's no basis to find that the investigating officer who then subsequently conducts further investigation could know or should have known that in that case, Mr. Cunningham, in this case, Mr. Alcox was innocent. And so is it your position that there is no way to ever overcome a confession? I mean, could there, it's not possible to have enough other evidence that someone else committed the crime to doubt the confession enough that you would think that the person was innocent? Well, but what's key here is that the belief that someone is innocent has to exist at the time that the investigation in question is taking place. So in this case, it can't be three or four months later that something would happen where law enforcement would conclude, gosh, I've got information now that causes me to believe that this individual who's under arrest and charged with this crime is innocent. Because if, if Mr. Ost intended to frame Mr. Alcox at the time he interviewed Caroline Gonzalez, which would be the only time he asked you about whether the claim goes to after that interview as well. I mean, if they found out something four months later and yet continue to investigate, isn't it possible that they're at that point investigating someone they know to be innocent? And I thought that that was part of what Mr. Alcox was arguing. And your honor, that's not, that's not how this, no, I don't believe that's what Mr. Alcox was arguing. Mr. Alcox has always just argued that Mr. Ost and Detective Hite coerced Caroline Gonzalez to use the name Joel Alcox instead of another name when she described the person she encountered in the alley talking about the murder. So under Devereux, prong one, and I cited to this court's footnote number one in Devereux, prong one, in Devereux, which focused on prong one. And I also cited two district court cases that have interpreted that footnote the same way that I do, which is that when you're assessing or analyzing under Devereux, prong one, to determine whether or not a plaintiff has made a case or shown deliberate fabrication of evidence, the court focuses on what was known to the law enforcement officer at the time that he or she was conducting that piece of investigation. And so in this case, because Mr. Ost had one 30-minute interview with Caroline Gonzalez, and that is his only interaction with her through this entire investigation, if he fabricated her testimony, if he caused her to use a false name when she stated who she saw in the alley, he had to have done that during that 30-minute interview. And if he intended to frame Mr. Alcox, which is the circumstantial quality of that evidence under Devereux, he had to have had that intent at that time, which means at that time, he would have had to have known Mr. Alcox was innocent. And he didn't, because under Cunningham v. City of Wenatchee, two weeks earlier, Mr. Alcox had provided a voluntary confession to the crime, and there was no reason to believe that he was innocent. Counsel, was there any evidence that the plaintiff claims was exculpatory and was known to your client that wasn't presented to the petty jury that convicted him the first time? So, let me ask it again. Is there anything that the plaintiff claims was so exculpatory that your client should have known that Mr. Alcox was innocent? Any evidence that your client should have known during the investigation that Mr. Alcox's counsel didn't have at the time of the crime? And then that was the basis for the finding of ineffective assistance of counsel, because everything that the investigators did, including their interview with Ms. Gonzalez, was documented in law enforcement reports. Their interview with Caroline Gonzalez, as you know from the audio submitted by Mr. Ost in this appeal, was provided. So, no. There's no part of this particular claim of fabrication of evidence that involves an allegation that the officers had knowledge that was not provided to Mr. Alcox's defense counsel. So, when did the notes about the alibis come out? I thought there was a difference between when the officers were saying there were no notes and then when it turned out there were. When did that happen? Oh, your honor, that doesn't really directly relate to Mr. Ost. All of the investigations, the alibi was conducted by the Lompoc Police Department. So, the voluminous handwritten notes that are in the record provided by in the supplemental excerpts, those were all records from the city of Lompoc that Mr. Ost never had access to, never was in possession of, and wasn't aware of. There's no evidence in the record to show that he had any knowledge of those notes. And what those notes appear to be are the notes of the Lompoc and investigating Mr. Alcox's alibi witnesses. So, that was an action that was conducted by the Lompoc Police Department, not by Mr. Ost. Want to save some time for a rebuttal? Yes, please. Thank you. Let's hear from Mr. Sanger then. Good afternoon again, your honors. Robert Sanger for Joel Alcox, the plaintiff below and the appellee here. I've heard the court entertain remarks on the standards for summary judgment and other matters and you've already raised some issues here. So, I'm going to skip some of the and respond to some of that first, if that's all right. First of all, it is very clear that we have raised from the beginning that there was a series of events that were ignored by Mr. Ost, investigator Ost, during this period of time that led up to the trial. And both he and the police officer Height were at the trial. And the investigation on the part of Mr. Ost was continuous from virtually the first week of this case, maybe the first day or second day of this investigation, certainly before Mr. Alcox was brought into custody. And we know that there is a whole series of events and information, not just the Caroline Gonzalez matter that the council wants to focus on and pick apart. Clearly, the law enforcement knew that it was Sanjay Patel, who was a suspect. Mr. Height or at the time, Detective Height and investigator Ost work together. We've submitted that in the reports, in the excerpts of the record and referred to it in our briefs. They work very closely together. They exchanged all their information. Investigator Ost actually used Lompoc Police Department forms when he did his reports because he was working hand in hand with Mr. Height. And I might point out that one of the issues that was raised is whether or not Mr. Height had briefed Mr. Ost on the information that pertained to the secret witness proceedings. And that was conceded. That was conceded as counsel. Can you tell me, is there evidence that you claim there is admissible evidence in the record that Mr. Ost fabricated any evidence here? Well, I think so. And again, which evidence? So, so first of all, the interviews with Carolyn Gonzalez gave her the name of Joel Alcox. Yeah, I've listened, I've listened to that. The district court apparently didn't think there was a complete tape recording, but there was, and I've listened to that and I don't see that there. So I have the transcript here. Why don't you tell me what page it is that, that the, what you're referring to and how that's fabrication of evidence. So, well, I wouldn't, I don't want to take all my time on that, but I do want to answer the court's question. So let me see if I can find it real quickly. Okay. Well, I, I've looked at it. I don't see it. I hear you've made a point on that besides supposedly suggesting the name. What other evidence? I don't see how that's fabrication of evidence, but what other evidence did they fabricate or did Mr. Ost fabricate? Okay. Let me, I'm not sure if you're suggesting I move on from it, but I did want to at least make a point without citing the page, but they did know that, that the person that Carolyn Gonzalez had talked to was a fellow with long blonde hair. And the person with long blonde hair was not my client, who's an adopted member of that family. He was his younger adopted brother who had very long blonde hair. And so they knew they never asked about that. They deliberately stayed away from interrogating her and finding out what the truth was. Okay. So counsel, you're saying that because they should have asked her different questions, they fabricated her statement where she was identifying someone who was identified to her as Joel? Yes. So her, and that point was, that point was made to the petty jury, right? So it was to a certain extent, although Carolyn Gonzalez has been interviewed subsequent to that in the post-conviction proceedings. But I don't want to belabor it. I want to answer the court's question, but I don't want to belabor it. All right. I think that in summary, what I would say about that is that the officers had in mind Joel Alcox, and they got an answer, Joel Alcox, and they didn't challenge it. They didn't question it. They knew that not only did she say John Wilcox to her mother, but... And that's in the interview. Other people say, yes, but other people say that John Wilcox is the person with the long blonde hair and so on. So, you know, we could pick this apart and that's really not the whole case, which is why I want to move on. But my question is, what did they fabricate? The district court said, for example, that there was evidence that there was coercive tactics in the interview. I listened to the interview. I didn't see that. There's also statements by the district court that they showed her photographs in an attempt to get her to implicate your client, and I don't see a scintilla of evidence that Mr. Ast or Hyte showed her any photographs. So I'm trying to get from you what was fabricated. So I think I'm answering that the best I can, which is to say it was the context, the overall context, and Carolyn Gonzalez says after the fact that she was coerced into saying what she said. Didn't she say after the fact that she was perhaps coerced by the female district attorney? Yes. So she didn't remember having the meeting with the two male officers who admitted that they had the meeting and they had a tape recording. So she obviously 30 years later did not remember clearly what happened. She was 14 years old, just turned 14 and was a drug user and said she was under the influence. Well, she remembered being showed photos by a female DA, right? Yeah. So the best, Your Honor, that we could reconstruct that for what it's worth would be that before, just before the trial itself, when she was being called as a witness, she was shown photographs of the defendant before she went into the courtroom. But whatever happened, Your Honor did ask about the, whether or not she testified as a witness in the jury trial and she did, but she was not cross-examined at all. There were no questions asked by the counsel who was found to be ineffective. But I would like to go on if I could real quick, because I think Judge Freeland may ask a question, a good question on this. And that is, what else were we talking about? Because it's not just the fabricating of that evidence. If we want to look at fabrication, one of the problems that we have in this case is that everything that got Mr. Alcox convicted, the officers had their hands in and manipulated. How did they manipulate his confession? Well, I don't know if you've had a chance to listen to that. It is lengthy. It is painful to listen to. And the record which reflects a transcript of it is painful to read, but if you listen to it, it's very painful. Well, the Court of Appeal found that it was not involuntary, right? The Court of Appeal for the state of California found that it was not involuntary, but then that is not a, that's not a law of the case because the case was eventually reversed and it was never retried. And when you listen to the, what actually happened, it is painful. He says, I didn't do it, I didn't do it. And they say your finger, they lied to him, your fingerprints are there. Lothry said you were there. And of course, Lothry from day one said it was Sanjay, told his own lawyer, we later found out from day one it was Sanjay and told the police officers that. He took some time in doing a composite drawing and eventually said it was Sanjay. Everybody knows at this point it was Sanjay. And they knew at the time that he was a suspect and they just let it go because they had somebody in custody. And for whatever reason, confirmatory bias, just, you know, trying to do whatever they're doing, they, they just looked the other way at a lot of this evidence. And of course, before the actual trial, Sanjay confessed on the 9-11, 9-1-1 tape. And that was played to the petty jury? Yes, that was. So one of the, so the issue at the end, at the end of the day is it's a combination of all these things. When we talk about fabricating evidence, and I'm not conceding that you have to have the kind of fabrication that sounds like sitting there and forging a document. It's the kind of fabrication and continuing to pursue a case when a trained investigator should know better. One of the things they did that I think was very clear fabricating, a clear example of fabricating evidence in that context was allowing Seelheimer to testify. And they were, they were the investigating officers. They were there. They said they were there for the trial. Seelheimer was called to testify. She testified to a version of events regarding these phone calls in the jail that were belied by the actual tape recordings. Wait a minute, counsel, can I interrupt you for a minute? Yes, your honor. It's the prosecutor who decides who to call. It's not the investigator. Yeah, I know, I understand. You said Mr. Addis allowed this person to testify. He didn't have any control over that. Court chose the words on my part. But what I was going to say, I'm trying to say, is that at the same time, they had never turned these tapes over to the defense. So the co-defendant who was severed, represented by public defender Boise, who is now a judge, but at that time, attorney Boise, he pressed it and pressed it and finally got a copy of those of Alcock. So they knew that the officers knew that they had not provided the discovery of the excavatory evidence. And that's why I say allow the testimony to occur. It wasn't that they made the decision as a trial lawyer, because they're not a trial lawyer, that was the DA. But they allowed that to occur, knowing that they had evidence that indicated to the contrary. And that's what the court found. Now, this is with regard to the jailhouse conversation with Lothary. Yes. And we're about about some cooking up and a phony alibi or not cooking up a phony alibi. Or why are you saying this when you weren't even there? That dichotomy? Yes. And the tapes show in the district court found that that that those tapes were not were in fact excavatory, that there was not people cooking up an alibi. And, you know, we have the additional evidence that, in fact, the alibi was a legitimate alibi. Every single person that Mr. Alcock's name agreed that he was at the party. Some could not, could not pin it down as to if he was there on the Air Force Base on the other side of town, that he was there at the exact moment. But at least two credible witnesses did pin down not only the fact he was there, but it was at that very time. And we, you know, the other issues that we have that we covered very clearly is that the decedent, before he died, said to the resident of the motel when he knocked on the door that it was Sanjo, in his recollection, who did it. He later said Sanjay to the young girl that was riding the ambulance. He said other things that sounded similar to it. They figured out who that was. They went to the house. In this case, the Lompoc police went to the house the very first night. And the father said, oh yeah, he's not here. That's unlike him not to come back. He says he doesn't want to come home. They interviewed him. He invoked. And then, you know, later he confessed on the tape. So there was a lot of evidence. I don't have time to go over the whole thing, but we were making the point that it is an overall failure to acknowledge that there was evidence of somebody else being the actual perpetrator. I think I'm out of time. Thank you, counsel. I think we have about three minutes for rebuttal, if I remember right. Thank you very much, your honors. So this is really important, and I mentioned this in my briefs. What Mr. Alcox is doing through this civil lawsuit for fabrication of evidence against Mr. Ost is he is relitigating his habeas action. And so almost everything Mr. Sanger just talked about either is not in the record in this case or is incorrect. So it's a false statement to say that the district attorney did not provide the jailhouse tapes to the defense, including Mr. Alcox's attorney prior to his jury trial. That's not true. That's not in the record. And it's just disturbing that this civil case is about did Mr. Ost coerce Caroline Gonzalez to say that the person she heard in the alley making incriminating statements was Joel Alcox when that wasn't true. And under the Devereux test, under prong one, Mr. Ost had no reason to know or to believe, nor is there reason today. No court has found him factually innocent. No court at all has found him factually innocent. So Mr. Ost had no reason to know or to believe that Mr. Alcox was innocent when he interviewed Caroline Gonzalez. Secondly, as Judge Bennett pointed out, you listen to that 30-minute interview. There is not one question asked that is coercive or abusive. So under the second prong of the Devereux test, Mr. Alcox fails to state a fabrication of evidence claim. And then I didn't get to get to it. I know you've read the briefs, but certainly under the qualified immunity test, the second prong is whether or not clearly established law would have advised a reasonable officer in 1986 that he couldn't ask the questions Mr. Ost and Sergeant Height asked during their interview with Caroline Gonzalez. And the district court relied on completely inapposite authority, Simmons v. United States, which concerns show-ups, lineups, and pretrial photographic approaches. In this case, again, as Judge Bennett pointed out, there is zero evidence that Mr. Ost ever showed a single photo to Caroline Gonzalez. The only time he spoke to her was that 30-minute context of that interview shows you no photos were shown to her. She has no memory of the meeting. Fundamentally, qualified immunity is absolutely appropriate here under both prongs of the qualified immunity test because Mr. Alcox cannot make a showing that there was any deliberate fabrication by Mr. Ost of Caroline Gonzalez's statement. And because no clearly established law told him in 1986 that anything he did with regard to Caroline Gonzalez would violate Mr. Alcox's constitutional rights. So I asked the court to reverse the district court's denial of qualified immunity. And as stated in the briefs, because the conspiracy claim is a predicate to finding a constitutional violation, that the court also reversed the Thank you both sides for the very helpful arguments. This case is submitted. We'll turn to our final case on the calendar, which is Garcia v. City of Los Angeles, 20-55522. And each side will have 15 minutes.
judges: Friedland, Ezra, Bennett